IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-CR-233

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ) | |
| DAVID LAMAR WOODS (2) ) | |
| ) | |

**THIS MATTER** is before the Court upon the defendant's motion to suppress evidence based on allegedly unconstitutional searches of his residence, (Doc. No. 31: Motion; Doc. No. 36: Supplement), and the government's responses, (Doc. Nos. 32, 38). For the reasons below, the Court will deny the motion.

I.   BACKGROUND

The defendant is charged with possessing methamphetamine with intent to distribute on March 27, 2020, (Count One), and on April 13, 2021, (Count Eight). (Doc. No. 30: Superseding Indictment). He is also charged with possessing a firearm in furtherance of a drug trafficking crime on April 13, 2021, (Count Ten). (Id.). Evidence in the case resulted, in part, from the execution of two search warrants at his residence, 3014 East Long Avenue, Gastonia, North Carolina, one on March 27, 2020, and the other on April 13, 2021. (Doc. Nos. 31-1, 31-2). The defendant alleges that the supporting affidavits did not establish probable cause, as required by Fourth Amendment; thus, all evidence resulting from the searches should be

1

suppressed. (Doc. No. 31: Motion at 1-2). He further argues that the March 27 search warrant is invalid because it failed to particularly describe the property to be seized. (Id. at 2). Finally, he claims both affidavits contain false statements and omissions, entitling him to exclusion of the evidence or a Franks hearing. (Doc. No. 36: Supplement).

II. DISCUSSION

The issues raised by the defendant involve review of the sufficiency of the affidavits presented to the North Carolina magistrates who issued the Search Warrants; therefore, a hearing is not necessary.

A. March 27 Search Warrant

1. Probable Cause

"Whether probable cause for a search exists is a 'practical, common-sense' question, asking whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Blakeney, 949 F.3d 851, 859 (4th Cir. 2020) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). A magistrate's determination of probable cause is given "'great deference,'" and a reviewing court asks "only 'whether the judicial officer had a "substantial basis" for finding probable cause.'" Id. (quoting Gates, 462 U.S. at 236-38). Additionally, a court may properly rely on an experienced officer's assertion, based on training and experience, to tie evidence of criminal activity to a suspect's residence. United States v. Williams, 548 F.3d 311, 320 (4th Cir. 2008).

2

The affidavit for the March 27, 2020, search warrant reads:[1]

THIS AFFIDAVIT IS EXECUTED BY DET. T. DOSTER OF THE RANLO POLICE DEPARTMENT (HEREINAFTER REFERRED TO AS AFFIANT).

AFFIANT IS A DETECTIVE WITH THE RANLO POLICE DEPARTMENT WHERE AFFIANT HAS BEEN EMPLOYED FOR EIGHT AND A HALF YEARS. AFFIANT IS CURRENTLY ASSIGNED TO DETECTIVE POSITION FOR THE RANLO POLICE DEPARTMENT. AFFIANT POSSESES A BASIC LAW-ENFORCEMENT CERTIFICATION FROM GASTON COMMUNITY COLLEGE IN JUNE 2011. AFFIANT HAS ATTENDED OVER 100 HOURS OF LAW ENFORCEMENT IN-SERVICE TRAINING. AFFIANT HAS INVESTIGATED NUMBEROUS MISDEMEANOR AND FELONY CASES. AFFIANCT HAS SUCESSFULLY EXECUTED NUMEROUS SEARCH WARRANTS IN HIS CAREER AS A LAW ENFORCEMENT OFFICER.

ON 03/27/2020 AT 1515 MYSLEF [sic] AND SGT. DOWD WERE ON ROUTINE PATROL AND WE OBSERVED A SILVER VEHICLE SITTING IN THE ROADWAY OUT FRONT OF THE RESIDENCE OF 3014 E. LONG AVE. GASTONIA NC 28054 WHICH IS A LOCATION MYSELF HAS BEEN OBSERVING FOR RECENT DRUG ACTIVITY BASED OFF VEHICLE STOPS. OFFICERS FROM THE RANLO POLICE DEPT. HAVE ARRESTED SUBJECTS COMING FROM THE RESIDENCE AND SEIZED DRUGS AND NUMEROUS OTHER PARAPHERNALIA. THE SILVER COLOR VEHICLE PARKED OUT FRONT OF THE RESIDENCE HAD AN EXPIRED REGISTRATION PLATE SO ME AND SGT. DOWD INITIATED A TRAFFIC STOP BASED OFF THE SAME AND WHILE INTERACTING WITH BOTH SUBJECTS I NOTICED AN OPEN CONTAINER OF AN ALCOHOLIC BEVERAGE SITTING IN THE PASSENGER SIDE FLOOR BOARD AND DUE TO THE DRIVER OF THE VEHICLE GIVING CONSENT TO SEARCH WE HAD BOTH SUBJECTS EXIT THE VEHICLE. UPON SEARCH OF THE VEHICLE I RECOVERED 2 SMALL PLASTIC BAGGIES WITH CRYSTAL METH IN EACH

---

[1] The copy of the search warrant affidavit filed with the defendant's motion is difficult to read. (Doc. No. 31-1). The Court has attempted to render the all-caps text faithfully and finds that any discrepancy in spelling or punctuation does not affect the substantive analysis regarding the affidavit.

3

AND A GLASS PIPE USED TO INHALE DRUGS INTO THE BODY. I ADVISED BOTH SUBJECTS WHAT WAS RECOVERED FROM THE VEHICLE AND THEY BOTH VOLUNTEERED TO WRITE STATEMENTS BASED ON THE EVIDENCE WE COLLECTED AS TO WHERE THEY GOT IT AND WHAT LEAD THEM TO GO TO THE RESIDENCE OF 3014 E. LONG AVE. GASTONIA NC 28054.

IT IS A COMMON ACT FOR CELLURLAR DEVICES TO BE USED DUE TO APPLICATIONS SUCH AS FACEBOOK MESSANGER [sic], SNAPCHAT, KIK AND NUMEROUS OTHER FORMS OF COMMUNICATION APPS.

DUE TO THE STATEMENT OF MUNISH PATEL DOB [redacted] STATING THAT HE USES HIS CELLULAR DEVICE TO GET IN TOUCH WITH THE SUBJECT THAT LIVES AT THE RESIDENCE OF 3014 E. LONG AVE. GASTONIA NC 28054.

THE COMPATIBILITY OF PERIPHERAL DEVICES AND SOFTWARE THE PERIPHERAL DEVICES WHICH ALLOW USERS TO ENTER OR RETRIEVE DATA FROM THE STORAGE DEVICES VARY WIDELY IN THERE [sic] COMPATABILITY WITH OTHER SOFTWARE AND HARDWARE. MANY SYSTEM STORAGE DEVICES REQUIRE PARTICULAR INPUT/OUTPUT DEVICES IN ORDER TO READ THE DATA ON THE SYSTEM. IT IS IMPORTANT THE ANALYST BE ABLE TO PROPERLY RECONFIGURE THE SYSTEM AS IT NOW OPERATES IN ORDER TO ACCURATELY RETRIEVE THE EVIDENCE INVOLVED WITH THE CASE.

ADDITIONALLY, THERE IS PROBABLE CAUSE TO BELIEVE THAT THE SUSPECTS ALSO USED THE 3 CELLULAR DEVICES AND RELATED HARDWARE TO COLLECT, STORE, MAINTAIN, RETRIEVE, CONCEAL, TRANSMIT, IN THE FORM OF ELECTRONIC RECORDS, IMAGES, DOCUMENTS AND MATERIALS, INCULDING THOSE TO FACITATE COMMUNICATIONS, EACH OF WHICH CONSTITUTES BOTH THE MEANS OF COMITTING AND THE EVIDENCE OF THE OFFENSE. THESE MATERIALS ARE ALL THEREFORE SUBJECT TO SEIZURE AND SEARCH PURSUANT [sic] FEDERAL RULES OF CRIMINAL PROCEDURE AND STATE OF NORTH CAROLINA RULES OF CRIMINAL PROCEDURE AND MAY BE RETAINED AS EVIDENCE AND AS INSTRUMENTALITIES USED IN THE

COMMISSION OF A CRIME FOR A REASONABLE PERIOD OF
TIME AND MAY BE EXAMINED, ANALYZED, AND TESTED.

(Doc. No. 31-1 at 3).

The defendant argues that the "bare bones" affidavit containing Det. Doster's assertions of police suspicion and information from anonymous informants cannot form the basis of probable cause to search someone's home. (Doc. No. 31: Motion at 6-9). The government rightly counters that the informant, Manish Patel, spoke to the detective face-to-face and provided a written, self-incriminating statement about calling "David" to pick up meth, asking "Chris" to take him to the house, and receiving two little bags from David in exchange for money. (Doc. No. 32: Response at 2; Doc. No. 32-1: Statement of Manish Patel). Thus, the informant was more trustworthy and reliable than an anonymous tipster because the detective could judge his credibility during the encounter, corroborate his information, and hold him responsible for any falsity and his own criminal conduct. United States v. Lawing, 703 F.3d 229, 236-37 (4th Cir. 2012) (citing United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000) (face-to-face encounters) and United States v. Harris, 403 U.S. 573, 583 (1971) (admissions of crime)).

Patel's statement was corroborated by independent police investigation which the defendant describes as unconnected to the time of the issuance of the search warrant and lacking specific dates, activities, and identities of persons stopped leaving the defendant's residence. (Doc. No. 31: Motion at 7-8). Det. Doster reported observing the location after "recent drug activity" was uncovered by vehicle stops

5

and arrests of people coming from the residence in possession of drugs and other paraphernalia. Thus, there was reason to believe Patel was telling the truth when he admitted similar activity on March 27. The defendant faults the detective for not including the words of Patel's written statement, but a practical, common-sense reading of the affidavit reflects an admission that the two small plastic bags of crystal meth came from the residence where the car had just left and that Patel used a cellular device to get in touch with a person there. Thus, the state magistrate had a substantial basis to find there was a fair probability that contraband or evidence of a crime, including incriminating information stored on cellular devices, would be found at 3014 East Long Avenue.

    2.    Particularity

Next, the defendant asserts the March 27 search warrant was invalid because it failed to describe with particularity the place to be searched and the things to be seized. (Doc. No. 31: Motion at 9). The Fourth Circuit "recently made clear that 'a warrant may satisfy the particularity requirement *either* by identifying the items to be seized by reference to a suspected criminal offense *or* by describing them in a manner that allows an executing officer to know precisely what he has been authorized to search for and seize.'" United States v. Cobb, 970 F.3d 319, 329 (4th Cir. 2020) (quoting Blakeney, 949 F.3d at 863 (emphasis in original)).

The government aptly points to language in the search warrant application which specifies that officers were authorized to seize property that constituted

6

evidence of the crimes of felony possession of Schedule II crystal methamphetamine and possession of drug paraphernalia and the identity of a person participating in them. (Doc. No. 31-1: Search Warrant at 2). Thus, the executing officers' discretion was appropriately confined to searching the property for and seizing evidence of those particular illegal activities.

The defendant also charges that the description of the places to be searched was overbroad because it authorized the search of the entire contents of the defendant's residence, vehicles, outbuildings, and person. (Doc. No. 31: Motion at 13). The Fourth Circuit rejects "a too-cramped understanding of a proper warrant" and recognizes that evidence showing a suspect is illegally possessing narcotics in his house provides a substantial basis for a magistrate to authorize a search of his entire house. United States v. Jones, 952 F.3d 153, 159 (4th Cir. 2020). As detailed above, there was probable cause to believe that Patel and others had recently obtained methamphetamine from a person in the 3014 East Long Avenue residence. Even if there were not probable cause to search other locations, the inventory of seized property shows that items were only collected from two bedrooms and a living room within the residence. (Doc. No. 31-1: Search Warrant at 4). Accordingly, there is no basis to suppress the evidence found during that search. See Cobb, 970 F.3d at 330-31 (severance doctrine allows admission of evidence seized under valid portion of warrant, even if another portion is found to be overbroad).

3. Good Faith

Even if the search warrant affidavit were found not to establish probable cause or if the search warrant authorization were found not sufficiently particular, the evidence need not be suppressed if the officers acted in objectively reasonable reliance on the search warrant. Blakeney, 949 F.3d at 861, 865 (citing United States v. Leon, 468 U.S. 897, 922-25 (1984)). Here, the search warrant is not so lacking in indicia of validity as to render belief in its existence entirely unreasonable, especially where Det. Doster had interviewed a person who admitted contacting "David" that day "to get some meth" and came to the residence to buy it from him. (Doc. No. 32-1: Statement of Manish Patel). Thus, the defendant cannot prevail on his motion to suppress the evidence obtained from the execution of the March 27 search warrant.

4. Franks Hearing

In a supplement to his motion to suppress, the defendant alleges that Det. Doster intentionally lied or misled the magistrate by suggesting both subjects in the vehicle stopped on March 27 provided incriminating information about 3014 East Long Avenue. (Doc. No. 36: Supplement at 4-6). "A district court may not hold a Franks hearing where, after stripping away the allegedly false statements, the truthful portions of the warrant application would still support probable cause." United States v. Friedemann, 210 F.3d 227, 229 (4th Cir. 2000).

Here, the driver of the vehicle, Christopher Hovis, provided a written statement claiming:

8

> I Christopher Hovis was at home when Munish called asking for a ride to E. Long Ave., Ranlo to get a wrench to work on his lawnmower. I left my home and went to Sixth Ave. Gastonia to pick up Munish he then directed me to E. Long Ave. in Ranlo. Upon arriving I stayed in my car which was parked on the road in front of the house Munish directed me to.

(Doc. No. 36-1). Manish Patel provided a written statement admitting:

> I had called David to pick [sic] get some meth about 1:00 p.m. He told me he would have it about 2:15--2:30 Chris my freind [sic] came by my house while I was working on my lawnmower I asked if he could give me a ride to pickup a sparkplug wrench he said sure. I dont [sic] have a licence [sic]. So I rode over to E. Long Ave. in Ranlo white house on the left. Chris stayed in the car while I walked inside David & another guy walk out of the room I hand David some money and he said wait just sec. and he hands me 2 little bags wraped [sic] in paper. I stick them in my pocket and ask him if he had sparkplug wrench, the other guy leaves and David was looking for wrench. So I get the wrench and starting fluid and left.

(Doc. No. 32-1). The defendant accuses Det. Doster of falsely summarizing:

> I ADVISED BOTH SUBJECTS WHAT WAS RECOVERED FROM THE VEHICLE AND THEY BOTH VOLUNTEERED TO WRITE STATEMENTS BASED ON THE EVIDENCE WE COLLECTED AS TO WHERE THEY GOT IT AND WHAT LEAD THEM TO GO TO THE RESIDENCE OF 3014 E. LONG AVE. GASTONIA NC 28054.

(Doc. No. 31-1 at 3).

Read literally, as the government suggests, Det. Doster accurately reported that both subjects gave statements explaining why they went to the residence. (Doc. No. 38: Response at 2). The deeper question, as the defendant raises, is whether the detective intentionally sought to mislead the magistrate into thinking both subjects confirmed drug activity there. (Doc. No. 36: Supplement at 5). However, the Court need not resolve that issue because the affidavit would establish probable cause even

9

if "subjects" were reduced from the plural to the singular. As detailed above, Patel's admission of buying meth from David at the residence, corroborated by recent arrests and seizures of others leaving the location with drugs and paraphernalia, provided a substantial basis for the magistrate to find probable cause and issue the search warrant.[2] Accordingly, the defendant is not entitled to a <u>Franks</u> hearing.

B. April 13 Search Warrant

1. Probable Cause

The defendant argues that the April 13 search warrant is invalid because the affidavit only established probable for the outbuilding where Gregory Lewis lived, not the residence where the defendant lived. (Doc. No. 31: Motion at 17). The government responds that the affidavit contains probable cause for the "main house" and its curtilage, including the outbuilding in back. (Doc. No. 32: Response at 6).

Officer Matthew Farra submitted an attachment to the application for a search warrant which included a definition of the "premises to be searched" as:

> The premise [sic] to be searched is a white in color house with dark grey shutters with a gravel driveway located on the right side of the roadway.
> The premise to be searched also includes any outbuildings, storage sheds, and dog houses located on the property to be searched.

(Doc. No. 31-2 at 7). In the probable cause section of the affidavit, Officer Farra

---

[2] Hovis's written statement did not impeach Patel's; according to both, Patel asked Hovis for a ride to pick up a wrench at the residence, which he did. (Doc. Nos. 32-1, 36-1). Hovis remained in his vehicle and presumably was not in position to see Patel also purchase meth while inside.

10

recounted information about the "premise to be searched," such as:

- Gregory Lewis, known by law enforcement as a distributor of controlled substances, specifically methamphetamine, moved into the premise two weeks prior;
- the officer observed unusual "in and out" traffic to the premise, which is a dead-end roadway;
- near-by residents reported to police about traffic and suspicious activity related to the premise;
- Lewis left the premise on April 13 in a vehicle and, when arrested on outstanding warrants, was found in possession of a sale amount of methamphetamine and user amounts of alprazolam, clonazepam, and marijuana.

(Doc. No. 31-2 at 4-5). One of the fifteen paragraphs in the probable cause section specifies that Lewis was "staying in a building behind the main house." (Id. ¶ 4).

The defendant's reading of the affidavit is in error because he constrains "premise" to mean only the building where Lewis was "staying." (Doc. No. 31: Motion at 17-18). The defendant has not shown any reason conclude Lewis had no connection to the whole property when the officer defined the term "premise" as the white house with grey shutters plus any outbuildings or sheds at 3014 East Long Avenue. Accordingly, the state magistrate had a substantial basis to find there was a fair probability that contraband or evidence of criminal activity would be found at the house and other buildings based on observations of suspicious activity there coupled with Lewis being found in possession of a distribution amount of methamphetamine upon leaving the property on April 13.

    2.     Good Faith

Even if the search warrant affidavit were found not to establish probable

11

Case 3:21-cr-00233-RJC-DCK   Document 39   Filed 04/05/22   Page 11 of 13

cause for the house, the search warrant is not so lacking in indicia of validity as to render belief in its existence entirely unreasonable. Officer Farra recorded that he conducted surveillance of the "residence" beginning April 2, after citizens reported increased traffic in the area and learning that Lewis, who had recent arrests for possessing with intent to distribute heroin and methamphetamine and possessing a firearm as a felon, had moved into a "shed in the backyard of the property." (Doc. No. 31-4 at 1). After several different surveillance operations, Officer Farra concluded the increased traffic was coming from the "residence," and he identified Lewis departing from and returning to the "residence." (Id. at 2). Officer Farra met with the defendant on April 13 at the "residence" and left a copy of the search warrant inside on the living room table. (Id. at 4). Therefore, it was objectively reasonable for Officer Farra to act in reliance on the search warrant authorizing the search of the house and other buildings where his investigation established a connection between Lewis and the "residence," not simply the "shed." See Blakeney, 949 F.3d at 861, 865 (evidence need not be suppressed if officers acted in objectively reasonable reliance on the search warrant).

    3.    Franks Hearing

In the supplement to his motion to suppress, the defendant extends his argument above into an accusation that Officer Farra provided false or misleading statements when he described Lewis's connection to the house at 3014 East Long Avenue, when he knew or should have known that Lewis only resided in the

12

"outbuilding" or "shed." (Doc. No. 36: Supplement 7-9). The defendant has failed to carry his heavy burden to make a substantial preliminary showing of falsity because he has not shown that Lewis was confined to the outbuilding. Even if Lewis slept in the shed, it is a mere conclusory allegation to claim that Officer Farra did not observe him elsewhere on the "premises" as described in the affidavit and at the "residence" as described in his report. Accordingly, the defendant is not entitled to a <u>Franks</u> hearing on this issue. <u>See</u> <u>United States v. Moody</u>, 931 F.3d 366, 370 (4th Cir. 2019) (standard for obtaining a hearing).

III. CONCLUSION

The searches authorized by the search warrants did not violate the defendant's Fourth Amendment rights.

**IT IS, THEREFORE, ORDERED** that the defendant's motion to suppress, (Doc. No. 31), is **DENIED**.

The Clerk is directed to certify copies of this order to the defendant, counsel for the defendant, and to the United States Attorney.

Signed: April 5, 2022

Robert J. Conrad, Jr.
United States District Judge

13